May it please the Court, I would like to address the two cases that the Court requested comment on. The first I'll address is the North County's case. In that matter, the district court determined that there was no private right of action, and on that basis dismissed the case with prejudice. Suis Ponte, the court of appeal, invoked the doctrine of primary jurisdiction, noting that the Court does not lose jurisdiction when that doctrine is invoked. If jurisdiction is retained, then the Court has the option of issuing a stay, or if the parties are not prejudiced, to dismiss but without prejudice. By contrast, Reader v. Cooper, the claimant in that matter had a duty to file a claim in the Court, but first it was argued he had to go to the FCC and have the tariff rate determination adjudicated at that administrative level. In that case, the court, reviewing court, applied an equitable balancing and determined that it was not necessary to send the case to the referral agency, but rather could continue, could adjudicate that case on its own, and did so because of the equities that were presented to that court. In this case, our district court invoked the doctrine of primary jurisdiction, which we disagreed with for different reasons, but in so doing dismissed the case but dismissed with prejudice. We respectfully argue that there really is no authority to dismiss the case with prejudice. Rather, the case, if it's to be dismissed at all, should be dismissed without prejudice. We further argue that the matter should not have been sent out for primary jurisdiction. The primary jurisdiction cases that are cited in the briefs and the ones that were brought to our attention by the Court. It's a little bit tough to know exactly what the district court did, because it clearly invoked the doctrine of primary jurisdiction to say the case. It did, Your Honor. And while it said it was dismissing or it was – it identified the motion as being one to dismiss on the basis of primary jurisdiction, in fact, it cited cases which are the exercise of equitable abstention doctrine under California law. So it's a little tough to decide what you did. In your view, does that really make any difference? What you want is a dismissal without prejudice. Well, Your Honor, we'd be very happy with that result. What we would really like is a remand to the district court with instructions to further remand to the superior court where this case now belongs. There was a time when there was a damaged cause of action which had an amount in controversy in excess of $75,000. That cause of action has been dismissed. The only cause of action that remains is the 17,200 claim, which my clients as private citizens have the right under State law to pursue concurrently with the same right that the governmental agencies, the people of the State of California or the County of San Francisco have the right to pursue under the same theory. Our argument is that neither the people of the State of California nor the City of San Francisco has chosen for whatever their reasons to pursue that remedy. Nonetheless, we've made the standing requirement, the showing necessary to say that we've been harmed by this allegedly unlawful practice, and we have the right to pursue what is essentially a garden variety land use abatement action under 17,200. As I was mentioning a moment ago ---- You know, one thing I just didn't understand from your argument is why does the fact that the damaged claim was dropped affect whether the case should go to State court or not? I mean, there's still an injunctive relief claim that's got to be worth value-wise more than $75,000. Are you saying something different from that? Well, no, Your Honor. The effect of the injunctive relief, the effect of most civil injunctive relief actions is going to have an economic consequence. That's true. But as I read the standing requirement for subject matter jurisdiction, there has to be a damaged claim asserted. The minimum damages are $75,000 or greater in order to have that jurisdiction. I could be wrong. I mean, I'm not from this circuit, but I don't think that's right. I mean, I think that when, you know, if that were the case, then no claim that just has injunctive relief that's a diversity claim could ever be in Federal court. I mean, you look at the value of the claim, don't you? Well, let's get past that. I mean, is your argument basically, are you arguing that the reason the case should go back to State court is that the only claim that meets the diversity jurisdiction requirements is now gone and so it should be sent back under 1367? Well, that argument, Your Honor, and that this began as a State court action, it involves very local issues. It arises under a California code. There's no Federal statute that's been invoked. And it's a completely local matter. It's a land-use abatement matter. And that I was trying to contrast with the many cases that have been cited where the primary jurisdiction doctrine has been invoked. And those are all matters that have to do with tariff rates or some sort of analysis of economic policy under whichever jurisdiction, ICC, Coastal Commission, the beverage case that was cited, the health care case, desert health care, where the Court said it's not the Court's business to get into the thicket of economic complex, economic fiscal decisions that's best determined by the particular agency. In this case, we have no such complex fiscal issues. There are no economic determinations. It's a land-use matter. Does the sign in question have a permit? If it does, does the sign that's there conform with the permit? It really is that simple. So it's a simple analysis rather than the complex analysis that we see in all the cases that have sent, referred, rather, these cases from the Court out to the agency. The bottom line, though, is that whether this case gets remanded or not, it should not have been dismissed with prejudice. It should have been dismissed without prejudice. But we feel that the most appropriate forum for this case is in the State court, and we ask the district court to remand the case to the State court under its general abstention authority to do so. I'd like to reserve any time I have left unless the Court has any questions. Surely you have quite a bit. Mr. Cardozo. Thank you, Your Honor. And to address the Court's pre-argument question, I think the place to start is with Judge Reimer's observation, because it touches right on the heart of the matter. It is true that the district court invoked both primary jurisdiction and the California State law doctrine of equitable abstention and dismissing. Where in the district court's order does it say that? If you look at page 9 of the order, excerpts of record, page 10, lines 6 through 13, the sentence that reads, when an unfair competition law action would drag a court of equity into an area of complex economic policy, that is the rule of equitable abstention that the court is citing. And if you look at the cases that the court is citing right there, Shamsian and Desert Healthcare, those are both State law unfair competition actions dismissed on the ground, dismissed with prejudice on the ground of equitable abstention, not on primary jurisdiction. So what you're saying is when the district court used the phrase, used the words primary jurisdiction, that same paragraph was just kind of loose talk, and what it really meant was this abstention, this unfair competition abstention. Yes. And I can point to both text in the order that leads to that conclusion and, more in our view, unambiguously, this is what the district court was doing. You've got to recall when this order is entered, the district court has twice stayed the case previously on the grounds of primary jurisdiction. So the district court understands that primary jurisdiction is a case-suspending doctrine. But in particular, if you look back at the April 2007, the second primary jurisdiction stay, which there's two relevant orders to look at, the special master's order at excerpts of record 31 through 35, and then the district court's subsequent adoption of it, which is in Clear Channel's excerpts, SER 5. In that second primary jurisdiction stay, at that point, Clear Channel had moved to dismiss with prejudice on the ground of equitable abstention. And special master Lynch said, okay, there's a plausible basis here to do this, dismiss on equitable abstention. We think it's – I think it's a little premature right now, this legislation that's adopted, this new administrative scheme that's come in is brand new. What I'm instead recommending is that rather than terminating the case with prejudice, let's extend the primary jurisdiction stay a little longer, and then later, take up the question of whether to dismiss with prejudice, further stay under primary jurisdiction, et cetera. So back then, the distinction was very clear. Primary jurisdiction is a case-suspending doctrine. Equitable abstention is a case-terminating doctrine. The courts had it in mind. And when they intended a primary jurisdiction stay, they stayed the case. They didn't dismiss. Kennedy. Counsel, you referred me to page 9 of the district court's order. I'm looking at the bottom of page 11 and the top of page 12 where the court said, because the city has a comprehensive mechanism for the enforcement of its signed regulations, dismissal of this action under the doctrine of primary jurisdiction is appropriate. Isn't that the order of the court? No. Unquestionably, there are some things slipped into this order. You've got two reasons given in this order. And unquestionably, he slipped in primary jurisdiction where he shouldn't have. He should have just stopped at equitable abstention. But there are a couple of other things in the order I want to point to your attention. Also on page 9, in addition to the passage I cited, the court goes on to say, this Court sitting in equity has discretion to decline the use of its equitable powers. He's clearly talking about equitable abstention there, because primary jurisdiction you use the language of suspending or deferring, not declining. And then you have the same thing at the bottom of page 10, top of page 11. You see the words again, declining jurisdiction, not deferring or suspending. Let me ask you a question. Does it make any difference in the sense that does equitable abstention always, inevitably, necessarily mean a dismissal with prejudice? Or is that also within the court's discretion when it abstains on an equitable basis under California law? Every single one of the cases, at least that the district court cited, dismisses with prejudice. And I'm not aware of any that. I realize that. So. I'm not aware of any that use it merely as a suspension doctrine, because the essence of equitable abstention is. Well, it's not a suspension doctrine in the sense of a stay, but it – I guess my question is whether it necessarily precludes refiling in State court or otherwise. Yes, because the essence of the doctrine is not we need to hear from the agency first, it's this case doesn't belong in court, and if. Period. In the court's exercise of its discretion. Yes, period. Period. I mean, that's the law in court, period. Any court, State or Federal. Right. And if the court that gets the case first and exercises discretion includes this is the type of action, because the unfair competition law is of unlimited breadth otherwise. And at the same time, its commands are merely permissive, not mandatory. So if a court exercises its discretion to include this case does not belong in court, to dismiss it without prejudice is an idle act. You go and you try the next judge and you try the next judge until you find a taker who will pick it up. And we've seen from the eight years of this litigation and the multiple actions filed and the multiple appeals filed that these litigants will do that. So the determination that this case does not belong in court is what equitable abstention is all about. And again, going back to the context where we have a judge who previously stayed, if this judge wanted to invoke primary jurisdiction, you've got a clear record that the judge knows how to do it. The judge stayed when that was the intent. But did anybody seek to clarify his order? No one sought to clarify this order, which I would argue is a burden that falls squarely upon the appellant. It could have easily been clarified and corrected. Well, it's your position that the Court erred in invoking primary jurisdiction. Is that what you said to me a few minutes ago? Yeah. Well, I'll give you three. And if the Court erred in that order, did you make a motion for reconsideration to clarify, to assist the Court in its error? You or whoever represented? We don't think this order is wrong. It invokes equitable abstention, which is a permissible guy on to dismiss with prejudice, and the outcome of dismissal with prejudice is the right outcome. Now, there – I would give – I would offer up three well-settled appellate doctrines that resolve – would resolve a problem like this by simply affirming. Number one, if there is any permissible – because of the strong presumption of correctness, if there's any permissible construction in the order that upholds it, you adopt that. Rather than assuming because the Court has some mistake in articulation that the Court's invoking the wrong ground, why not adopt the doctrine of permissible construction and assume the Court based it on the correct ground that's in the But why do I have to construe this when I have the plain language used by the Court that it was relying on primary jurisdiction, which, by the way, was an issue that was brought up initially by your party, that the Court should invoke primary jurisdiction? You also have the plain language of equitable abstention, and you have the plain language of dismissal with prejudice, and the objective is to reconcile all of that, if possible, in a manner that upholds the order. Another appellate doctrine, if it's right result, wrong reason, would apply if the Court had given the wrong reason altogether. In this case, the Court has given the correct reason in addition to primary jurisdiction. So this is a better case for right result, wrong reason than in the ordinary case. And the final appellate doctrine, this Court, of course, does not reverse for errors that do not affect substantial rights. You have a doctrine that fits, that permits a dismissal with prejudice, and the doctrine is, in fact, invoked in the order, and you've got the whole procedural context that shows the Court knows the difference between primary jurisdiction and equitable abstention. If there's some mistake in articulation, that's not an error that affects substantial rights. An equitable abstention dismissal with prejudice is fully supported on this record because you have a record that shows that there's a complete administrative scheme that is addressing and reviewing every sign in the city for compliance. Well, wasn't there an impact on the substantial rights here? What the Court said in dismissing with prejudice means that it has to go to the But if that administrative body gets it wrong, it cannot refile a complaint either in State court or the district court. Isn't that a substantial right that's lost? But that's the application of equitable abstention. If the Court determines, as it did in this case, that this is a problem, you see, this is a problem that the signed ordinance itself contemplates is not going to be addressed through the administrative process. That was the exact basis of the equitable abstention in the Shamsian case the district court cited. If the legislation not only sets forth prescriptions but also shows that the legislature thought the problem it's trying to address is going to be solved through the administrative process, it is improper for any court to step into that fray. That's what the district judge Conte found in this case, and it certainly fits. The signed ordinance legislation doesn't just set forth prescriptions on the signs. It says the city has to review each and every one for compliance. If the city is doing that, there's no question a court action is going to interfere and meddle in that, and there shouldn't be any court action, not now, not ever. That's the essence of equitable abstention. Thank you, Mr. Cardozo. Mr. Murthy. Thank you, Your Honor. Well, I would respectfully disagree that Judge Conning slipped into disorder the words primary jurisdiction. I was at that hearing and we discussed that issue at that hearing and many other hearings as to whether or not it was appropriate to invoke that doctrine. So if it's really primary jurisdiction and that the mistake the district judge made was to say with prejudice as opposed to without prejudice, in this kind of situation, what's going to be the occasion that will bring the case then back into court? In other words, if it's a primary jurisdiction dismissal, you're dismissing it without prejudice to find out how the State law gets administered by the agency or whatever it is. What's going to be the trigger that pulls the case back into court? We have to file a new action. The reason for that is unlike all of the cases that have been cited where there is an agency as to which the claimant in court has a remedy, we have no remedy in that city of San Francisco enforcement policy. It's the city who is enforcing its laws as they can do under 17200 or under this administrative procedure. Would you turn around tomorrow and file a new suit or would you wait? We would. You would? We would. Yes, we would. As we've argued for the sake of this discussion, let's just assume it's true, is the city has for whatever its reasons not invoked its powers to abate these nuisances. They're still continuing. How come you didn't sue the city? I mean, I guess one of the sort of basic problems I have with this is you're sort of trying to engraft under this law some sort of a court rate of action. If the city is not doing its job, why don't you sue the city? It's kind of off point. I understand that, but. I'm not sure that we have the procedural basis to sue the city, frankly. Okay. I could, but that's my answer at the moment. I don't know that we have that right. But I think it's important to point out that once each of these enforcement actions comes to its conclusion that the city institutes, nothing happens at that point. The city has to, unless there's voluntary compliance, the city would then have to go to court and get an order for an injunction to abate the nuisance and to collect the fines that it established. It doesn't end at the city administration level. It would go to the court, not in one action, but in ten actions, 200 actions. It's alleged that there are 300 or more illegal signs. Each one of those signs, and mind you, the property owner has a stake in this as well because the fines operate against the property owners. They're going to seek their rights in court through this writ petition. So it doesn't stay at the administrative level. It winds up in court anyway. So it makes no difference whether we invoke it in one fell swoop, multiple violations of the unfair competition law for multiple signs or piecemeal as the city concludes each action and each decision by the city is challenged by each other, by the sign company or both, in a separate petition. And, in fact, in our papers, we've cited two very, two actual cases that Clear Channel did that, the Erklins case and the Lee case. They didn't like the city's conclusion, so they sued the city and ended up in court. Bottom line is, these disputes will end up in court one way or the other. This is not an administrative system that provides my client a remedy. We have no claim in that system, as do the plaintiffs in all the cases where primary jurisdiction has been invoked. Those same plaintiffs are claimants. Okay. One more question. That is precisely what remedy is it left that you seek? Injunctive relief, to either remove the illegal sign if it's not permitted or to reform the sign to its permitted condition. And the reason you have a right to ask for removal of illegal signs is? They're public nuisances. They violate the planning code. They violate the building code. And does your client want to step in and put up legal ones? I mean, is that what's going on? No. My client, for example, has a sign across the street. Yeah. Clear Channel has an illegal sign on the other side of the street. Yeah. The signs are the same size. Yeah. The traffic patterns are the same. The demographics are the same. Clear Channel has illegal signs all over San Francisco. And? And? I'm sorry? Well, I mean, okay, so you've got a legal sign. They've got an illegal sign across the street. Correct. So? So they're able to place ad copy on their illegal sign. Yeah. Because of the vast number of signs that exist in San Francisco, they have more favorable buying rates. And most of the signs that they're using to get those favorable rates are illegal. So you've got a sign. In other words, you're basically saying if all those signs were taken down, your client would have a bigger chunk of the market, right? That's correct. That's what I was asking. Okay. Great. Thanks very much, Counsel. Thank you. Both of you for your argument. The matter just argued will be submitted.
judges: Kennelly, Alarcon, Rymer